MICHAEL D. NASATIR, ESQ. [State Bar No. 58121]
VICKI I. PODBERESKY, ESQ.[State Bar No. 123220]
NASATIR,HIRSCH,PODBERESKY,KHERO & GENEGO
2115 Main Street
Santa Monica, California 90405
Telephone: 310 399-3259
Facsimile: 310 392-9029
email: vip60@aol.com
Attorneys for Defendant
FERNANDA ROMERO

MICHAEL T. SHANNON
Attorney at Law
301 E. Colorado Boulevard, Suite 320
Pasadena, California 91101
Telephone: (626) 744-0600
Facsimile: (626) 744-0606
email: MichaelTTShannon@gmail.com
Attorney for Defendant
KENT ROSS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 10-452-MLR |
| | ) | |
| PLAINTIFF, | ) | **DEFENDANTS'** |
| | ) | **TRIAL MEMORANDUM** |
| v. | ) | |
| | ) | Trial Date: 8/24/10 |
| | ) | Time: 9:00 a.m. |
| | ) | |
| FERNANDA ROMERO and KENT ROSS, | ) | Courtroom of the Honorable |
| | ) | Manual Real |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

1

**I.**

**INTRODUCTION**

This is a case of two young people, in love but naive to the complexities of marriage.  It is a case of an older man, Markus Klinko, who was obsessed with a young woman, half his age, who when spurned as her lover, was driven by spite and revenge to destroy her life, her career and her reputation. The young couple in this case is Fernanda Romero and Kent Ross. The vindictive suitor is Markus Klinko. The government has accepted without question the fabricated information presented to it by Mr. Klinko, his agents and his associates. Based on this information, the government now seeks to convict Fernanda Romero and Kent Ross of conduct which is rarely criminally prosecuted and which is more appropriately and usually the subject of administrative proceedings.

**II.**

**STATEMENT OF FACTS**

**Fernanda Romero**

Fernanda Romero was 23 years old at the time of the events in this case.  She was born and raised in Mexico City, Mexico in 1981. She, and her brother Sergio, have supportive and loving parents, who encouraged their children to pursue their passions. Ms. Romero's passion was to be an actress.  Her career began at the age of 16, where she was a member of the popular Mexican teenage musical group, Fryzzby.  The group released its first CD in 1999 and that same year had the honor of singing for Pope John Paul II.

2

Ms. Romero graduated from high school in 2000, and made her way to Los Angeles, California on a tourist visa[1]. At about this time she met a young man named Michael Ball, now CEO and founder of Rock & Republic Jeans. Ms. Romero and Mr. Ball began a friendship and dating relationship which lasted several years. During this time, Ms. Romero enrolled in and attended classes in fashion design at Santa Monica City College, and continued to pursue her career as an actress and model.

**Kent Ross**

Kent Ross came to Los Angeles from Utah at the age of 18 to make a name for himself in the music industry. He and some friends and fellow musicians from Utah formed a rock and roll band and began to aggressively promote their music. They had the initial bad fortune to lose their lead singer, which turned to good fortune when they replaced him with Josh Todd. With Todd as their lead singer, the band toured the world for two years playing to sold out audiences in places like Osaka, Japan. In 2004, shortly before Kent met Fernanda Romero, Todd left and the band broke up. This was a bitter disappointment for Kent, who had to resume his day job as manager of a pizza delivery service and put together a new band. However, he had tasted success and at age 24, aspired to do it again.

---

[1] From 2000 through 2005, Ms. Romero remained in the United States on a tourist visa, traveling at least every six months back to her permanent residence in Mexico.

3

**Love and Marriage**

Kent Ross and Fernanda Romero met at a promotional event for Rock & Republic in 2004.  Both Kent and Fernanda shared a Hollywood lifestyle filled with late nights, parties and travel for their respective careers.  They initially struck up a friendship, and a romance between them blossomed in 2005. Fernanda and Kent found themselves caught up in a whirlwind romance, marrying several months after becoming romantically involved with each other.

Their wedding, as the evidence at trial will show, was modest, with only a few close friends and family. Plans, however, were made by Fernanda's parents for a larger celebration in Mexico. Like many young lovers who idealize life together, the reality of daily living and struggling careers took its toll on their relationship.  After some months, Fernanda moved forward with her career and as Kent struggled with his. The two young newlyweds traveled down separate paths that at times, throughout their 5 years of marriage, left them separated both geographically and emotionally. They always, however, have found themselves back together and forever in love.

**Markus Klinko**

In July 2005, Ms. Romero responded through her agent to an interview for a photo shoot.  The photographer was Marcus Klinko, a seemingly successful and well-regarded celebrity photographer. Klinko was immediately attracted to Ms. Romero, enticing her with promises of placing her in high profile modeling campaigns. Over the next year and a half, Marcus Klinko helped Ms. Romero with her

4

career, conducting photo shoots, assisting her in obtaining a New York agent, and making promises to build her career as a model and actress. These promises, however, came at a price:  Klinko over time became obsessed with Ms. Romero.

Twenty years her senior, he began a campaign of manipulation in an effort to win her affection.  Ms. Romero, married, but wanting to further her career, first became his friend and then in 2006 eventually succumbed to Klinko's advances, not out of any feeling of love but because he made her feel indebted to him for the efforts he had expended to help her professionally. The government contends that the relationship between Klinko and Ms. Romero is a factor that demonstrates the Ms. Romero's marriage to Kent Ross was a sham. The defense contends that it was a regrettable mistake that occurred during a period of time when Ms. Romero and Mr. Ross were having personal difficulties in their relationship.

Realizing that Klinko was becoming increasingly attached to her, Ms. Romero attempted to break things off at the end of 2006. Klinko became enraged sending numerous angry and venomous emails, including pornographic photographs of himself having sex with a model from a Nike photo shoot that had also featured Ms. Romero.

Upset and scared by Klinko's erratic behavior, Ms. Romero sought the help of her friend, Michael Ball.  Mr. Ball contacted Klinko and demanded that he cease his contact with Ms. Romero, and that if he did not stop there would be legal consequences for his actions. The result was that Klinko immediately sued Mr. Ball for

extortion and slander, as well as breach of contract relating to a dispute between Klinko and Michael Ball's company, Rock & Republic.

Klinko quickly turned the lawsuit against Ball into an unrelenting effort to have Ms. Romero criminally prosecuted and deported. Klinko hired investigators and lawyers, and solicited the assistance of his current and former employees and acquaintances in an effort to harm Ms. Romero. He then went so far as to direct his agents to contact the federal government with the "evidence" he had compiled. This prosecution is the result.

### III.

#### THE CHARGES IN THIS CASE AND THE EVIDENCE

The government has charged Ms. Romero and Mr. Ross with marriage fraud, a violation of 8 U.S.C. Section 1325(c)(Count One). Ms. Romero and Mr. Ross are also charged with: violations of 18 U.S.C. Section 1546(a), giving a materially false statement (that their marriage was not fraudulent) under oath (Counts Two, Four and Five); and violations of 18 U.S.C. Section 1001, false or fraudulent statements concerning residence Counts Three, Six and Seven).

**Marriage Fraud**

In order to prove a violation of Section 1325(c), the government must prove that *at the time the marriage was entered into*, Fernanda Romero and Kent Ross did not have the intent to establish a life together. *See Matter of Laureno*, 191 I&N 1, 1983 WL 29913 (BIA 1983). In this case, the alleged violations of 18

6

U.S.C. 1546(a), as set forth in Counts Two and Five, are also based on the government's contention that the marriage between Ms. Romero and Mr. Ross is fraudulent. Thus, a conviction on Counts One, Two and Five depends on the government being able to prove beyond a reasonable doubt that the defendants did not intend to establish a life together at the time of their marriage on June 12, 2005.

The government's proof of this vital fact depends primarily upon the testimony of Markus Klinko, as well as Cynthia Pinot and Manisha Maraj, both of whom are linked to Markus Klinko. All three of the government witnesses claim that Ms. Romero and Mr. Ross made out-of-court statements that their marriage was a sham. These witnesses also claim that both Ms. Romero and Mr. Ross stated that Mr. Ross was paid $5,000 for marrying Ms. Romero. The defense will show at trial that there is no evidence of such payment.

As the Ninth Circuit Model Jury Instructions state with regard to statements allegedly made by a defendant, a jury "should consider all of the evidence about the statement, including the circumstances under which the defendant may have made it." *See* Ninth Circuit Model Criminal Jury Instruction 4.1 *Statements By Defendant.* The defense will present evidence that bears upon the credibility of these out-of-court statements including but not limited to evidence of bias and motive of Klinko, Pinot and Maraj against Ms. Romero. That evidence will consist of testimony by witnesses who are aware and knew of Klinko's desire to seek revenge on Ms. Romero, as well as testimony concerning Pinot's hatred and dislike for Romero. Evidence will also show that Maraj, who rented

7

Ms. Romero's apartment for a brief one month period of time in 2006, had no relationship with either Romero or Ross and would not have been privy to any such alleged admission.

The defense will also present testimony as well as, documentary and photographic evidence that Fernanda Romero and Kent Ross were very much in love at the time they got married and that they intended to establish a life together. Finally, the defense will establish through expert testimony factors indicating a valid marriage based upon the evidence in this case.

**Violations of 18 U.S.C. Section 1001**

Counts Three, Six and Seven involve alleged false statements by both Ms. Romero and Mr. Ross on G-325A Forms under the section requesting a list of "residences." The issues presented as to these three counts are two-fold: (1)what constitutes a "residence," and (2) whether the alleged misrepresentations as to residence are material.

The government contends that Ms. Romero prior to April 2005 "resided" in Los Angeles and failed to disclose those residences. The defense contends that prior to April 2005 Ms. Romero's only residence was Mexico. The defense will present expert testimony on the meaning of "residence", as well as evidence concerning Ms. Romero's state of mind and understanding when she completed the G-325A Form both in 2005 and again in 2007.

Further, the government must prove beyond a reasonable doubt that the allegedly false statements are material. The requirement of materiality is a "mixed question of fact and law to be decided

by the jury." *United States v. Matsumara* (9th Cir. 2001) 244 F.3d 1101.  The defense will present expert testimony that the information concerning "residence" on the G-325A Form, did not have a natural tendency to influence the decisions of the INS.

## IV.

## CONCLUSION

The defense respectfully requests leave to file further supplemental memoranda before or during trial regarding the issues in this case.

Dated: August 18, 2010    Respectfully submitted

NASATIR, HIRSCH, PODBERESKY, KHERO & GENEGO


By: _____/s/_____
MICHAEL D. NASATIR
VICKI I. PODBERESKY
Attorneys for Defendant
FERNANDA ROMERO


By: _____/s/_____
MICHAEL T. SHANNON
Attorneys for Defendant
KENT ROSS

9